Council for the appellant. You may proceed. Thank you. Thank you, Your Honor. Judge O'Scanlan. Judge Graber, Judge O'Scanlan, Judge Fitchwater, may it please the court. I'm Jerome Bowen on behalf of the appellant, the estate of Christopher Rosales et al. And I'm here today to argue this, the appellant's side of this bill. Your Honor, what we have essentially here is a situation where a young man, Christopher Rosales, took a weightlifting supplement in approximately May of 2013 that contained an ingredient called thiolamethylamine, which I'm just going to pronounce as DMAA. It's a little hard to pronounce. And that was an ingredient in the weightlifting material. He subsequently, within weeks or a month or so, approximately June of 2013, expired. A subsequent autopsy thereafter revealed that he had passed away from cardiotoxicity. And it mentioned the use of DMAA. And again, that was sometime after his death. What's at issue here is after that happened, we, on behalf of Mr. Rosales, went and filed a lawsuit against CTD Labs, a Texas company. And that case proceeded for a period of time. CTD Labs turned around and submitted the claim, the lawsuit, to its insurance company, which are the Appleys in this case. I'm pretty familiar with the facts of the case. The first issue is whether constructive notice triggers the coverage under the 2013 policy. And under that, I suppose, we have this choice of law issue. Why don't you address that first? Sure. On the issue of constructive notice, it's clear that policy refers to New York law. And that's in an endorsement in the policy. There's been no attempt by any party to ask the court to utilize New York law. The district court's decision didn't apply necessarily New York law in comparison to other laws. It just essentially said they look all the same. But with the issue of constructive notice, it appears that constructive notice... Is there any other connection to New York in this proceeding? We are aware of no connection, Your Honor, at this point to the state of New York. So what state would you say, what law, what state should we apply? The law that you should apply is Nevada. It has the most connection, the most relation to the facts. It has the connection to the settlement agreement, stipulated judgment. It has connection with Crisper Rosales, his death. In other words, the circumstances that were present, which, in other words, are really, you could say, was an occurrence. So, Your Honor, if you apply Nevada law, looking at Nevada law and choice of laws, they look at, with constructive notice, they look at the fact of what was known. And I'll give specifically what they talk about. They state, and it's cited in the brief of the appellees. It says that there needs to be the following circumstances. They say that the circumstance needs to be one where there is a notice of requirements of the claims made, sufficient specificity to alert the insurer's claim department to the existence of a potential demand for damages arising out of an identifiable incident involving an identified or identifiable claimant or claimants with actual or anticipated injuries. What's interesting about that, Judge O'Scanlan, is if you equate that then to the policy itself, specifically with title Roman numeral 10. Title Roman numeral 10, subsection B, talks about circumstances, notice of circumstances. Now, what's interesting about this policy, even though it says it's a claims made policy, and the appellees refer to that, it says, but as otherwise provided. Now, you all know that in a claims made policy, you've got to report, the incident has to happen during the policy period, and you've got to report the claim during the policy period. This policy does more than that. It changed the trigger for purposes of circumstances, which I just read to you, Nevada Supreme Court talked about. If you look at subsection B, under reporting of circumstances, it doesn't indicate that if you don't file a notice of circumstance within that year, the year that you are aware of it, in other words, a year of the policy, then there's no coverage. And if you compare that... I'm sorry, I thought you were done. It's about a different provision in the policy entirely, and that is the exclusion for anything that arises out of any products or goods manufactured, sold, handled, or distributed by ordinance for regulation of a government or agency. And by the time that Mr. Rosales bought these products that contain DMAA, the FDA had banned it, as I understand the facts. And if I'm correct about that, why doesn't this exclusion simply foreclose coverage on the merits without regard to the choice of law question? That's a good question, Judge Graber, and I'll address it this way. When the policy was implemented, there was no knowledge of the DMAA predicament that I will call. At some point, there became some knowledge. What we don't know the exact time, we believe it's April of 2013, but because there was no discovery conducted as to how the FDA went about advising people such as CTD Labs. Now, we know they put out the material, we know that they issued something, but whether or not CTD Labs was specifically informed, how they were informed... Why are that? It simply says there's no coverage if the thing you sold is sold in violation of a law or regulation. It doesn't say, you know, ignorance of the law is an excuse. It says, we just don't cover that. If you've sold something that's illegal to sell, their coverage doesn't apply. And your honor, that's the key, because by the time that the FDA had issued that, the product was already sold to the vendor. Now, the vendor then had the product. Yes, yes, yes, Judge Loscaldo. Counsel, did you allege in your complaint anything which would form the basis of a conclusion that at the time the manufacturer produced this product, it was legal? We didn't specifically allege that, your honor. I think by way of the the paragraph structure as to when we believed it became illegal would indicate that it had to be manufactured before that, because it had to be on the shelf within a week or two. It was within a week or two. So just by way of the chronology of the facts as we understand them, from the time that it would have been manufactured, sent to the local nutrition stores, put on the shelf, and then purchased by my client, it was a matter of mere weeks, your honor. And we know that from the information from the nutrition stores, that that product had been there for some time. And again, I think that's what Discovery would ferret out. The first amended complaint, ER 220, says on or about April 11, 2013, prior to the product being sold to Christopher, meaning the decedent, the FDA allegedly announced that DMA containing dietary supplements are illegal and their marketing violates the law. So it's not just about manufacture. It's about marketing. And then you go on to say, well, he wasn't told about that. But the way I read the exclusion, it doesn't depend on being told. It simply says, we don't want to cover injuries that arise from the sale or marketing or manufacture or distribution of something that's illegal. And again, Judge Graber, I think the issue there then is that goes to nutrition stores. By the time that April banning by the FDA occurred, from what we understand of the facts, is that the manufacturer had already manufactured, already sent it off to the nutrition stores. It seems to me that the way the exclusion operates, and maybe I'm misunderstanding the exclusion, that if the injury or the occurrence arises out of use or sale or whatever of a banned product, there's no coverage. It's a question of causation, not a question of knowledge. I'm reading it. What's wrong with that reading? Judge, that may be a proper reading. I'll tell you the language is operating under the direction or the control of the insured. And that's language specifically contained in that particular statement. And I don't believe that that is sufficient here for purposes of that April or May sale, that April banning and then the May sale. Because again, it likely left the hands of CTD. And again, discovery would ferret all this out. The causation effect, we don't have any sufficient, other than upon information and belief, we don't have any sufficient discovery to be able to say, this is what the causation was. These were the exact dates. This was the labs versus nutrition stores. I'm looking, Your Honor, Judge Graber at page seven of the answering brief. It quotes directly that provision. If you want to see that at the bottom of the page, Your Honor, I know you're looking for that. Yeah. It's looking in the ER, but this will work. Yeah. Yeah. It's right there, Your Honor. And so the question is, there would be some questions of fact there. Who was operating under, were others operating, was the nutrition stores operating under the direction or control of CTD labs? When was it manufactured? When was it sold? When was it handled or distributed or work completed by the insured, by CTD labs versus nutrition stores? So I think there's just unknowns there, Judge Graber, that would prevent, we this exclusion and denying coverage. But if you'll look at, if you'll look at the subsection B of that, of that, oh, I see that I'm down to my time. I'll go ahead and stop there and reserve if I could have two and a half, two minutes left, Judge. Yeah, you may count, so you may reserve your time. Thank you. I'll have, I'll go ahead and reserve 2.30. Thank you, Your Honor. Very well. Now for the appellees. Good morning. My name is Tom Brewster. I represent the underwriters and the appeal, the appellees. May it please the court. I'm happy to explain for you our view of this case. I mean, it is a fundamental case of interpreting insurance contracts as written. And that's true to refer to the choice of law point. That premise is true in any of the states that you would consider in New York or Nevada or Texas. They all have very strong law that you interpret. Which law do you believe should apply? Your Honor, the only facial connection of the contract to New York is that, for example, there's a service of suit clause in New York City, for example. Otherwise, the parties chose that law probably because of the predictability and well-known New York state of law. But the insured was located in Texas at the time. In terms of the formation of the contract, the formation of this contract had nothing to do with Nevada yet. So in that sense, from a formation of the contract point of view, I think Texas might make more sense. Texas law is just as strong as Nevada. Nevada law is very strong on the interpretation of these contracts as written. And each of them, for example, is very strong law that claims made policies in particular are enforced as written. I'm not sure I understood your answer to Judge Controls. I think the most logical is Texas, Your Honor, because that was the location of the policyholder at the time of the contracting. And I think that makes sense in a contract case. I'm sorry if I wasn't clear. In our view, Texas has very strong law interpreting... What would you call it? No coverage. There must be either a statute you rely on or a case. I'm just speaking for myself. My tentative conclusion is that both New York and Nevada law are pretty clear, but Texas was not so clear. What do you rely on if you think Texas fought flies? Texas has good authority that claims made policies are interpreted. For example, there's a case called Komatsu, K-O-M-A-T-S-U. Komatsu is at 806 Southwest 2nd. That's a case that in particular involved notice under a claims made policy that was five days after the expiration of a case. And they said, you know what? Claims made policies are interpreted strictly. And if the notice is not within that period, Texas will not enforce it. So Komatsu. Other cases we cite on the importance of notice include Broussard. There's a case called Matador Petroleum. The case of a claims made policy notice itself constitutes the event that triggers coverage. So between Komatsu... Is there a statute? Those are cases. Komatsu is 806 Southwest 2nd. Is there a statute that you rely on outside of the interpreting a statute involving notice of a demand under a contract? But Komatsu made clear that notice is important under a claims made policy and that it is definitive. The question by Judge Graber is asked on the illegal products exclusion. I will say that the plaintiff's pleadings are clear. I think that they are alleging that when CTD manufactured this product, they knew it was illegal. They say in paragraph 17 of their complaint, they say, and that's at ER220. They do say that CTD labs continued production and distribution of Noxipro with full knowledge of the illegality of the ingredient, full knowledge of the potential risks of serious injury and or death it posed. Now, the issue that counsel raised about the timing of delivery from CTD to the vendor, how long it sat in the shelves, that's not in the pleadings. And we don't know the timing of that. That's not in the pleadings, for example. Their pleadings say it was illegal. And that CTD continued production with knowledge of the illegality. So I do think that the illegal products exclusion does fight here. There is an overriding theme, I will say, of impossibility that the appellants assert impossibility of notice. Appellees say that there is no application of impossibility here. This contract functioned as it was intended to. The plaintiff below, the estate of Mr. Rosales, after his unfortunate death, did actually give notice and gave notice under a claims-made policy, and they gave notice after they were sued by the estate of Mr. Rosales. They did that in 2015. That doesn't somehow reflect the impossibility of giving notice. That reflects the proper operation of the structure set up by the conditions of the contract. So notice was given after the lawsuit in 2015. For example, the illegal products exclusion was in the 2015 policy, as was a very specific exclusion mentioning DMAA by name. And so there was no coverage under the 2015 policy. The estate then sued to try to get money, basically, to try to assert rights under the 2013 policy, I think because it contained only the illegal products exclusion to which Judge Graber referred. And it didn't contain the specific DMAA exclusion by name. And so I think the estate may have figured that perhaps there would have been coverage under the 2013 policy. Fatal to that is that there was never notice under the 2013 policy, and that notice was properly given under the 2015 policy. The notion that the giving of notice was impossible legally under this contractual setup doesn't make any contract that more explicitly excluded coverage. Underwriters don't think that works any kind of, it's not a technicality, but that is how notice is supposed to be given. That is how it was given later on, and they properly denied coverage under the later policy. Counsel, with respect to the part of the complaint, of course, as a concession on this issue? I do. It is the only allegation on the timing of CTD's manufacture, CTD's own continued production and distribution regarding the illegality of it. It says that CTD labs continued production and distribution with full knowledge of the alleged illegality of the underlying this, but we don't think discovery would help because the product was definitely illegal when used. They definitely didn't give notice under 2013. If you wanted to consider what happened under the 2015 policy, it was definitely excluded by name. DMAA was excluded in very clear language. So we don't think any discovery below would help any of that. The pleadings are also very clear that there was no notice given in 2013. Therefore, we are not going to find in discovery that there's a notice document lurking in anybody's files. I think the pleadings of the plaintiff, the pleadings are clear that there was no actual notice given in 2013. So we don't think amendment would solve anything. We would go back and find that notice was given in 2015. The constructive notice theory does not work. There was no actual notice given. If the court would find it helpful, if you look at the requirements of the policy on giving notice of a circumstance, that would have been a different situation. CTD could have given notice of a circumstance and their specific requirements about what you have to say, what you have to describe. The truth is, no notice of circumstance was given. That could have attached this claim to the 2013 policy if CTD had been aware of the death and whether they'd read about it in the newspaper or heard about it from their vendor or something. CTD could have said, uh-oh, there is a death of this Mr. fellow. We understand there's a possible connection and the policy has very specific requirements about what it would have required, about what they needed to say in terms of a notice description, the description of a specific circumstance. You could have said the death of a user of our product containing DMAA. Number two, the date on which it took place, let's say they would have said approximately, we hear that took place June 26th, the injury or damage, death. The identity of injured person, Mr. Rosales, the facts by which the insured first became aware of the circumstance. Those five things could have been given by CTD if they had been aware of it, but they weren't. So that is an extra way that CTD could have attached coverage to the 2013 policy, but they didn't because they weren't aware of these things. In the scheme set up by an insurance policy, that's not a problem. When the claim was finally made in 2015, two years later, they did give proper notice. So the extra possibility of notice of a circumstance wasn't triggered here, didn't happen. And the notice in 2015 was proper. Back to Judge Graber's point, coverage for this particular claim was excluded under both of them. The district court actually made a point of saying that that exclusion for illegal products ought to be interpreted very strictly as a public policy matter. We don't really want to be covering liability that arises out of an explicitly illegal product. And the district court thought that that rises to the level of a public policy concern, that that be interpreted strictly. Counselor, just a technical matter to help me out. You cited a case called, is it Komatsu or Tumatsu? Komatsu with a K, sir. With a K. And is it referred to in your brief? I can't find it. Pardon me, your honor. The answer is, I'm not sure that particular case is. I think it's in the body of... Is it in your brief? Yes, your honor. I mean, I know we cite the Broussard case, B-R-O-U. I know we cite the Broussard case. Yes, I see Broussard. Thank you. And that again, it enforces the terms of a claims-made policy. Nevada and Texas and New York, for that matter, all recognize the importance of claims-made policies. In terms of what should have happened, I mean, I don't know. I don't know what CTD itself, the manufacturer, was willing to pay to settle its liabilities here. The plaintiff's estate did have a remedy against the manufacturer of the illegal product. I don't know what those discussions were. I wasn't involved in that underlying lawsuit. The estate here had a remedy, and that was against the company that manufactured this product. And instead, they are asserting these rights to insurance. But unfortunately, there is no coverage so. I just had a quick look at Broussard, and that's a too late actual notice. What about a constructive notice case out of Texas? Your honor, I'm sorry. I don't have an actual constructive notice, an imputed notice. I don't have a site on constructive notice. Of course, it's because counsel was arguing there was constructive notice given the announcement by the federal agency. Yes, and constructive notice, I will point out, constructive notice admits it is part of constructive notice that there was no actual notice. So under the conditions of the policy, there was no actual notice. I don't have to hand a constructive notice case. We have that the Williams case in Nevada involving constructive notice. I don't have a companion case in Texas, your honor. You insisted that Texas law should control this case. So I'm trying to find out how I can validate your assertion because so far, I can't find the Texas law that confirms what you said. Texas law confirms that notice is a valid requirement under a claims made policy. Constructive notice is not actual notice. So under Texas law. Okay, but is there a case that says constructive notice under Texas law is not citation to hand? I could seek to supplement by a letter to the court if that were helpful. Anything further, counsel? Your honor, I think you've asked good questions and I have nothing further. Very well. Counsel, Mr. Bowen, I believe you have a few minutes, two and a half minutes. You might want to deal with this Texas point. Are you there? I think we need to turn on your voice. I apologize. Thank you. Thank you, Judge Graber for being patient. I want to start with that, because that's the first time I've heard the appellee argue that Texas law should apply and not Nevada. Counsel, can I also, as you're answering Judge O'Scanlon's question, I did not see a constructive notice argument in the opening brief, which may explain why the answering brief doesn't contain citations about constructive notice. Did I miss something? And then go ahead and respond, of course, to Judge O'Scanlon's substantive question. The only thing that I can recall, Judge Graber, about the reference to constructive notice in the opening brief is probably in the facts section dealing with the complaint. I believe it's in the complaint, but I would have to go back and look at that, Judge. But I know that it was discussed in the briefing because it's in the appellee's brief, because we did assert it in the case through the I want to go back to that, because I've never heard them argue that Texas law and not Nevada law is controlling here. In the Kamatsu case, they don't cite that in their brief. I don't see it in their list of cases in the brief. But I want to go back to the issue of constructive notice in Nevada. That's the, Judge O'Scanlon, that's the Physician's Insurance v. Williams case at 279 P. 3rd 174. And again, in that case, which I read to you the requirements of the notice requirements, or the occurrence requirements, you'd have to have sufficient specificity of the circumstances, potential demand for damages, an identifiable incident involving an identifiable claimant or claimants with actual anticipated injuries. And I think that goes back, if you'll look at subsection B, Judge O'Scanlon, under section 10, that talks about those five things. You have to have those five identifiable, yet the last one is the facts by which the insured first became aware of the circumstance. And the circumstance is defined as an occurrence. So let me tell you the fatalness of the carrier's argument. This should not be treated as a claims made policy for purposes of notice of circumstances. That's a separate trigger from under section A, titled of section 10. That's the claims notice. Section B is notice of circumstance. That brings in the occurrence. And there's nothing in that this year, the year of the occurrence, then you're precluded. Yet you look at section A, and it says that. It says, there shall be no coverage for any claim reported later than 60 days after the expiration of this policy. So subsection A clearly deals with a claims made coverage, but they changed the trigger point. They expanded it, and they made it vague and ambiguous as to when you have to give the notice of the circumstances or the occurrence. So this is essentially an occurrence policy. So in 2015, when CTD labs learned what the Nevada Supreme Court said constitutes an occurrence, they immediately put the carrier on notice. Mr. Bowen, do you say this was essentially an occurrence policy? Do you know whether the premium that they paid was based on occurrence or claims made? Because it's typically very different. It is typically very different, and I don't know that, your honor. And it's not clear in the policy why there's this distinction. Why the distinction is, except as otherwise provided, this is a claims made policy. Because there are changes. There's a trigger change in this. And that's key. And they define, if you look at their brief on page 7, right out of the policy, they define circumstance, and they equate that with an occurrence, which I've read to you under the title of an occurrence. And I'll leave it at that, your honor. Thank you very much. You're very, very welcome, counsel. We appreciate counsel's arguments this morning. We will now take, the case just argued will be submitted for decision, and we will now take a 10-minute break. All rise. This court stands in recess for 10 minutes.
judges: O'SCANNLAIN, GRABER, Fitzwater